TEXAS & P. RY. CO. v. SHAW et al.
(No. 8275.)

(Court of Civil Appeals of Texas. Dallas.
Jan. 17, 1920. On Motion for Rehearing, Feb. 28, 1920.)

1. APPEAL AND ERROR ⟿1048(1)—IRRESPONSIVE ANSWER AS TO FEELINGS OF PLAINTIFF PASSENGER HARMLESS.

In an action by passenger who claimed that, as a result of waiting in a cold station, he contracted la grippe resulting in pneumonia, where the passenger, in response to a question as to how he felt when he was on the train, stated, "Any one that knows how a man feels when he is taking la grippe and cold knows pretty well how I felt," the answer, though irresponsive, was harmless; it appearing that the passenger undoubtedly suffered la grippe.

2. EVIDENCE ⟿553(4)—HYPOTHETICAL QUESTION TO MEDICAL EXPERT NOT OBJECTIONABLE ON THE GROUND THAT FACTS ASSUMED HAD NOT BEEN PROVEN.

In an action by passenger who claimed that, as a result of waiting for a train in a cold station, he contracted la grippe which resulted in pneumonia and tuberculosis, hypothetical question to a medical expert held not objectionable as assuming facts not proven and not corresponding to the facts shown and calling for speculative or conjectural answer.

3. CARRIERS ⟿320(7)—SUBMISSION OF PASSENGER'S CLAIM THAT PNEUMONIA AND TUBERCULOSIS RESULTED FROM EXPOSURE IN COLD WAITING ROOM HELD PROPER.

In an action by passenger who claimed that he suffered la grippe and cold resulting in pneumonia and tuberculosis from waiting in a cold waiting room, held, that the submission of the questions whether pneumonia and tuberculosis resulted from the la grippe was, under the evidence, proper.

4. CARRIERS ⟿321(5)—INSTRUCTION SUBMITTING PASSENGER'S CLAIM THAT PNEUMONIA AND TUBERCULOSIS RESULTED FROM EXPOSURE IN COLD WAITING ROOM HELD SUFFICIENT.

In an action by passenger for claim that as result of exposure in cold waiting room he contracted la grippe resulting in pneumonia and tuberculosis, instructions submitting those issues held correct.

5. CARRIERS ⟿318(2)—EVIDENCE SUFFICIENT TO SUSTAIN VERDICT THAT PASSENGER SUFFERED LA GRIPPE, ETC., AS RESULT OF COLD WAITING ROOM.

In an action by passenger who claimed to have contracted la grippe resulting in pneumonia and tuberculosis from exposure in cold waiting room, evidence held sufficient to sustain a finding that the passenger suffered such injuries as claimed, and the denial of a new trial was not error.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Henry N. Shaw and others against the Texas & Pacific Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Dinsmore, McMahan & Dinsmore, of Greenville, for appellant.

B. Q. Evans, of Greenville, and C. E. Sheppard, of Sulphur Springs, for appellees.

RAINEY, C. J. Appellee instituted this suit against appellant to recover damages for personal injuries sustained by him from cold contracted in the waiting room at Sweetwater, Tex., where he remained for several hours without any fire, the weather being very cold, and by said exposure he was caused to contract cold and la grippe, from which he suffered, and which resulted in pneumonia and tuberculosis.

Appellant answered by general denial, special plea of absence of negligence, plea of contributory negligence, and that any disease with which appellee was afflicted was contracted long after the alleged exposure and was not proximately caused by such exposure.

A trial resulted in a verdict against appellant for $3,500, from which this appeal is taken.

The evidence shows that appellee and his wife and son were traveling on tickets from Post, Tex., to Greenville, Tex. They reached Sweetwater late in the afternoon between 4 and 5 o'clock. Soon after, they went to a restaurant and returned to appellant's waiting room. At that time the weather was getting cold, a norther having sprung up, and it gradually got colder for about two hours before the train left for Ft. Worth. The train left Sweetwater about 10:30, having reached there about 9:12. There was no fire in the waiting room until about 30 minutes before the train left. Appellee testified, and on this point he was corroborated by other witnesses, as follows:

"It was near dark after we got back to the depot from the restaurant. We came straight from the restaurant to the depot and went in the sitting room of the depot. At that time the weather was getting right cold, you know; it got cold in the waiting room of the depot. The train we were to leave on was not on time that night. From the time we got back to the depot from the restaurant it was real cool at the time, and it grew colder, and by the time the train came it was real cold; it seemed to blow up a norther. I got awfully cold there in the depot. I said that the depot kept getting colder, until it got right cold, and I got right cold. It seemed to me like it was an hour or so before the train came that I got so cold. There wasn't any fire at all in the sitting room of the depot. There was a big stove sitting there, but there was no fire in it. * * * As near as I can estimate it, it was about 30 minutes before the train left that they made the fire in the stove; but we did not go to the stove because the train was in, and we got our baggage together and went to the train."

The evidence adduced on the trial is sufficient to warrant the finding that appellee was seriously injured from la grippe, which resulted in pneumonia and in quiescent "fibroid tuberculosis," as diagnosed by physicians.

[1] The first assignment of error is:

"The court erred in overruling the defendant's motion to strike out an answer of the plaintiff made upon his direct examination in answer to a question by his counsel inquiring about how plaintiff felt bad while on the train, and how he felt bad, which answer was: 'Any one that knows how a man feels when he is taking la grippe and cold knows pretty well how I felt.' The ground of the motion to exclude the answer was that the answer was not responsive to the question and was a statement of a conclusion or conjecture of the witness, and of an opinion of the witness, as is fully shown by defendant's bill of exception No. 1."

The proposition submitted by appellant under said assigment is:

"Appellee, a nonexpert, by a voluntary statement not in response to the question asked, stated, in effect, that he immediately after the alleged exposure had la grippe, one of the diseases for which he claimed damages, when there had been no proof that appellee at any time had la grippe, and the motion to exclude the testimony ought to have been sustained."

We do not agree with appellant's proposition that there was no proof of appellee not suffering with la grippe, as we think, when all the evidence is considered, it shows conclusively that he had suffered from la grippe. The answer may not be responsive to the question and a conclusion of the witness, but is of such a nature as not to present reversible error, and is therefore harmless.

[2] The second and third assignments of error are presented together, and read:

2. "The court erred in permitting plaintiff's witness Dr. E. F. Wright, while testifying upon direct examination and in answer to a hypothetical question which assumed as a fact the condition which was sought to be proved, to say that it would be natural to presume that the plaintiff's condition was due to cold and la grippe; the defendant having objected to the question on the ground that the question assumed as true the facts sought to be proved, as is fully shown by defendant's bill of exception No. 4."

3. "The court erred in permitting plaintiff's witness Dr. E. F. Wright, in answer to this question, 'Well, in that condition of health the la grippe and cold gets worse and develops into pneumonia, to what would you attribute the development to? defendant having objected to the said question because it assumed as true the fact sought to be proved, to say: 'Well, it would be natural to presume that the remote cause was due to the exposure.'"

The question propounded reads:

"Q. 'Now, doctor, I want to go back a little and ask you a hypothetical question. Say that Henry N. Shaw here on the 3d day of December, 1915, was in good health and strength, a strong, able-bodied man for his age, able to do hard manual labor and made no complaint of suffering pain, had no trouble with his lungs or anything of that character, however, he did have blood poison in the finger which has resulted in a stiffened condition of the finger, and an operation followed, and he suffered from soreness of the finger, but it later got well. Say with that exception he goes into a depot about 8 or 9 o'clock at night, somewhere along there, and they did not have any fire, and it blew up a norther that evening, late in the evening it got cold, disagreeably cold, and there was no fire in the station, and his feet, limbs, and body become cold and chilled, he had a rigor and shivered in there, and he began to sneeze and take cold, his throat got sore, and the next morning he develops a cough and what ordinary laymen call a cold and grippe, and it continued to get worse and he had a little fever from then on clear to December, just after Christmas, he had taken good care of himself, not exposed himself, although he had been out a few times when the sun was shining in the middle of the day, well wrapped up and experienced no cold, and this cold and la grippe developed into pneumonia. Now, stopping right there, I'll ask you from your viewpoint as a medical man, a man of science, I'll ask you to what you would attribute the contracting of that cold and la grippe, to what exposure, if any?' To which question the defendant objected because it assumed facts to be true which had not been proven, and because the facts recited do not conform to the facts proven, and because an answer to the question would be speculative and conjectural, and would necessarily be guesswork. The court overruled the said objection, and the defendant at the time in open court excepted, whereupon plaintiff's counsel said, without waiting for an answer of the witness to the question: 'Assuming these facts to be true (meaning the facts set out in the foregoing hypothetical question), to what would you attribute the development of the cold and pneumonia?' And the court permitted the witness to answer said question and say, and he did answer and say: 'It would be natural to presume that it was due to the exposure.' To the ruling of the court and the admission of said testimony the defendant at the time excepted."

Appellant does not state in its brief in what respect the facts are not stated to make the question objectionable as a hypothetical question, and we are unable to say that it is objectionable on the ground pointed out. Therefore the ruling pointed out was not error.

[3, 4] The fourth assignment of error complains of the court's third paragraph, authorizing the jury to consider pneumonia and its effects as an element of damages on the ground that, under the evidence, pneumonia was as a matter of law too remote as an element of damages, and submits the following proposition:

"The evidence showing without contradiction that appellee's pneumonia developed 27 days after the alleged exposure, and further showing that pneumonia is caused by a specific germ, and

that it often attacks strong and healthy people who have had no exposure and have had no cold, the exposure was too remote to authorize or support a finding that the exposure was the cause of the pneumonia."

The third paragraph of the court's charge is:

"Now, if you believe from the evidence that on or about the 3d day of December, 1915, the plaintiff while en route from Post City to Greenville, Tex., went to the passenger depot of the defendant, Texas & Pacific Railway Company, at Sweetwater, and there waited for the train scheduled to leave Sweetwater at 9:30 p. m. on said date, and that the defendant's agents and servants in charge of said depot failed for a period of one hour prior to the arrival of said train to keep the passenger waiting room in said depot comfortably warm, and that as a proximate result of such failure, if they did fail, the plaintiff was exposed to cold, became chilled and contracted cold, and was proximately caused to have la grippe, pneumonia, tuberculosis, and suffer in any or all of the ways alleged in his petition, then you will find for the plaintiff and assess his damages according to the rule hereinafter given you, unless you find for the defendant under other portions of this charge."

The court also charged the jury, in substance, that if appellee, while waiting for the train, under the circumstances was guilty of contributory negligence, if one of ordinary prudence would have gone to the hotel or any other place and kept warm, but failed to do so, and his failure to take such measures for his own safety and comfort proximately caused or contributed to his exposure, to find for defendant.

It will be noted that the evidence raised the question of whether or not pneumonia was the result of appellee's cold contracted in the waiting room of appellant, and said issue was fairly submitted by the court, and said assignment is overruled.

Appellant in like manner attacks the court's charge for telling the jury that tuberculosis could not be considered as an element of damages on the ground that, under the evidence, tuberculosis as a matter of law was too remote and uncertain to authorize finding that it was an element of damage. As heretofore stated in this opinion with reference to the charge on pneumonia, we think the evidence raised the issue and there was no error in the court's charge.

[5] The sixth assignment of error complains of the court for not granting appellant's motion for a new trial, because the verdict of the jury is against the evidence, in that there was no evidence which would authorize the jury to find that plaintiff took the cold from which he testified he afterwards suffered from exposure in the waiting room at Sweetwater during a time when it was required under the law to keep the waiting room warm.

We think the evidence sufficient to show that at the time appellee got off the train at Sweetwater he was a strong and healthy man; that there was no fire in the appellant's waiting room until about 30 minutes before the train left Sweetwater, and that it was one hour late in leaving; that a norther sprung up soon after appellee landed and it was cold in the waiting room, and appellee suffered very much from the cold, and from which exposure of appellee resulted proximately in la grippe, pneumonia, and tuberculosis, as shown by the evidence, which warranted the verdict and judgment for appellee. Therefore there was no error in refusing a new trial.

The judgment is affirmed.

### On Motion for Rehearing.

The appellant complains of our finding:

"That the train on which appellees were traveling reached Sweetwater at 8:12 o'clock at night and left at 10:30, which finding of fact clearly is an oversight of the court."

This statement was made by the court as claimed; still we do not think it in any way affects the decision of the case. While there was little divergence of opinion in the statement of some of the witnesses as to when the said train did actually arrive, we think there was sufficient evidence to show that during the time appellee Shaw remained in the depot at Sweetwater he caught cold, and that there was not any fire lighted therein for at least an hour before the departure of his train, from which exposure his sickness resulted.

The motion for rehearing is overruled.